| | |
|---|---|
| G.D., by and through his Guardian Ad Litem, Russell Johnson, Esq.,<br><br>Plaintiff,<br><br>v.<br><br>Kannapolis City Schools Board of Education; Madison Peele, in her official and individual capacity; and Joshua Sain, in his official and individual capacity,<br><br>Defendants. | **COMPLAINT**<br>**(JURY TRIAL DEMANDED)** |

**NOW COMES** the Plaintiff, by and through undersigned counsel, to hereby complain of the Defendants by alleging and saying as follows:

## PARTIES

1. As G.D. is a minor child, who has been sexually abused due to the Defendants' conduct and omissions, he is named in this Complaint by his initials to protect his identity.

2. Russell Johnson, Esq. is a duly licensed attorney in the State of North Carolina, who is seeking appointment as Guardian Ad Litem of G.D., a minor child, for the purpose of pursuing this action. A Petition seeking Russell Johnson, Esq.'s appointment for Guardian Ad Litem is being filed contemporaneously with this Complaint. G.D. resides with his custodial parent in Rowan County, North Carolina.

3. Defendant Kannapolis City School Board is a public-school board that is responsible for overseeing the operation and management of the public educational programs of Kannapolis City Schools. It is, and at all times relevant hereto was, a body politic, and a local

board of education, as that term is defined in North Carolina General Statute 115C, with the responsibility of providing school children full and equal access to public educational programs and activities offered in the Kannapolis community in compliance with State and federal law and the Constitutions of the State of North Carolina and the United States.

4. As the corporate body for Kannapolis City Schools, Defendant Kannapolis City School Board is a recipient of federal financial assistance within the meaning of 20 U.S.C. § 1681(a).

5. Defendant Madison Peele is a citizen and resident of Cabarrus County, North Carolina. Defendant Peele became the "Trilogy" program director at Forest Park Elementary within Kannapolis City Schools, which is a specialized educational program for students with heightened disciplinary and social needs, and she was also a classroom teacher in this program at the time of the sexual abuse that is the subject of this action. Defendant Peele is being sued in her individual and official capacity.

6. Defendant Joshua Sain is a citizen and resident of Lincoln County, North Carolina. Defendant Sain was the Principal and School Administrator at Forest Park Elementary with authority to take correctional action and respond to allegations of sexual harassment and abuse in the timeframe in which Plaintiff was sexually harassed and abused. Defendant Sain is being sued in his individual and official capacity.

**JURISDICTION & VENUE**

7. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 because the matters in controversy arise under the laws of the United States.

8. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over: (a) any civil action authorized by law to be brought

by any person to redress the deprivation under color of law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or for all persons within jurisdiction of the United States; and (b) any civil action to recover damages or secure equitable relief under any Act of Congress providing for the protection of civil rights.

9. Upon information and belief, Defendants have waived governmental immunity and all other forms of immunity against themselves that may otherwise have been applicable in this action by purchasing liability insurance, participation in a risk pool, settling similar claims, and/or as otherwise provided by law.

10. This cause of action also arises under the common law and the Constitution of the State of North Carolina. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

11. Venue is proper pursuant to 28 U.S.C. § 1391(b) because all parties exist or reside within this Court's judicial district and a substantial part of the events or omissions giving rise to the claims occurred within this district.

## FACTUAL BACKGROUND

12. G.D., a ten-year-old boy, began attending the 4th grade at Forest Park Elementary School ("Forest Park"), within Defendant Kannapolis City School Board's School System, in the Fall of 2018. G.D.'s mother had originally hoped that G.D. would attend another neighboring school, Carver Elementary. However, she met with Bonnie West, Defendant's Exceptional Children's ("E.C.") Director, and Dr. Jessica Grant, Defendant's Director of Student Services, to discuss the options available to G.D. Ms. West and Dr. Grant spoke with G.D.'s mother hoping to encourage her to send G.D. to Forest Park. They told G.D.'s mother that G.D. would be placed

in the "Trilogy" program, which would provide specialized instruction and socialization in a safe environment. Ms. West and Dr. Grant introduced G.D.'s mother to Defendant Josh Sain, Forest Park's Principal, to ensure G.D.'s mother was comfortable with the placement and with G.D. attending Forest Park. After speaking with them, G.D.'s mother allowed G.D. to begin his 4th grade year at Forest Park in Defendant Kannapolis City School Board's "Trilogy" program.

13. At Forest Park, G.D. quickly became a model student. So much so, he was awarded the "Student of the Month" just a few short months after enrolling. He was happy and doing well in school, despite prior struggles.

14. Aware that G.D. had shown he could be an exemplary student, the school noticed G.D.'s behavior changing when a new student (hereinafter referred to as "Student X") was also placed in the "Trilogy" program. G.D. became unable to focus in class, his classroom performance suffered, and he began acting out. Initially, the issues between G.D. and Student X were primarily fist fights and name-calling; however, their behaviors became much more troubling.

15. On March 21, 2019, Forest Park became aware of inappropriate sexual conduct between G.D. and his classmate, Student X. At this time, G.D.'s mother expressly informed the "Trilogy" program director, Defendant Madison Peele, that Student X was telling G.D. to "suck his dick," to "be his boyfriend," and that "[G.D.] was born gay." G.D.'s mother also informed Defendant Peele that Student X's conduct had escalated beyond sexually explicit statements; Student X had, without consent, kissed G.D. All of the foregoing is documented in the excerpted text messages from G.D.'s mother to Defendant Peele, attached as **Exhibit 1**. Upon information and belief, Defendant Peele reported this conduct to other officials at Kannapolis City Schools, in conformity with the school's published policies, specifically including Defendant Sain; however, neither Defendant Peele, Defendant Sain, nor other leadership at Forest Park (or Kannapolis City

Schools) took any action to address these documented complaints whatsoever. Rather, Defendant Peele, Defendant Sain, and leadership at Forest Park willfully and deliberately chose to do nothing, placing these young students at high risks of sexual abuse. Upon information and belief, beyond this basic reporting requirement, Defendant Kannapolis City School Board had no policies for investigating or following up on reports of child-on-child sex abuse within its educational programs. Concerningly, G.D.'s mother was never informed of any measures taken, and Student X and G.D. were allowed to remain in close proximity to one another on a daily basis.

16. As a result of the deliberate and willful inaction of, total lack of investigation by, and lack of proper policies and procedures in place at, Forest Park (and Kannapolis City Schools), the sexual behavior escalated, and more serious sexual activity began occurring between Student X and G.D.

17. On June 10, 2019, Student X and G.D. were left unsupervised, and alone, in a remote area of the jungle gym. At this time, Student X inserted his penis inside of G.D.'s rectum, and then told G.D. that he "wanted a different way." G.D. then sat down on the ground, and Student X sat on G.D.'s penis, inserting it into his anus. While this anal sex was taking place between these ten-year-old boys, Defendant Peele finally happened upon it, after she had deliberately and willfully chose to leave these boys alone and unsupervised for long enough to engage in intercourse. These events are well documented in school records attached hereto as **Exhibit 2**. Below is a photograph of where the anal sex occurred, where these boys were left unsupervised and alone by Defendants, after Defendants knew about the ongoing sexual conduct between them:



18. After the anal sex that happened on the school's playground, school decision-makers, including Defendant Sain and Defendant Peele, sent the boys home that day **without notifying their parents of what had occurred**. Instead, after the boys had already returned home from school, the parents were only told generally that an "incident" had occurred, and **they were not told that "the incident" was sexual in nature or that their ten-year-old children had engaged in anal sex**. G.D.'s mother only learned that her child engaged in sodomy from G.D. himself, and she believes, and upon information and belief, Student X and G.D. were allowed to ride the same bus home immediately after the "incident." At this time, all Defendants chose to continue to engage in their ongoing pattern of willful and deliberate indifference to child sexual abuse.

19. On the evening of the "incident," after her ten-year-old son told her that he had anal sex, G.D.'s mother took him to Atrium Health for treatment where her worst fears were confirmed.

20. G.D. has struggled to make progress since the anal sex at Forest Park. Particularly, G.D. suffers with behavior control due to low frustration tolerance, PTSD, and intolerance to simple life pleasures, such as touching and being held, as he perceives these gestures as threatening and intrusive. All of these conditions have made school intolerable for G.D., such that he has extreme difficulty going, and has missed many days.

21.     Crucially, Kannapolis City Schools and Forest Park, Defendant Sain, and Defendant Peele, had actual knowledge of the ongoing inappropriate sexual conduct between G.D. and Student X, and their willful failure to intervene, investigate or reasonably supervise these students caused both boys to have an experience that will traumatize them for life. How ten-year-old boys could be put in a situation where they could have anal sex at an elementary school is beyond comprehension. Neither the school, nor the school district, nor those with authoritative capacity, did anything to safeguard these students despite the express knowledge of prior sexualized conduct between these boys.

22.     Title IX prohibits sex-based discrimination in educational programs or activities receiving federal financial assistance. Sexual harassment and abuse of a student is discrimination "on the basis of sex" under Title IX. Furthermore, an institution can be held liable for Title IX violations if it has authority to address the alleged discrimination, has actual knowledge of the discrimination, and fails to adequately respond to the discrimination. Such failure otherwise amounts to a deliberate indifference to discrimination.

23.     Despite having documented, actual knowledge of the sexualized conduct among these boys on March 21, 2019, Defendants took no action, and they were deliberately and willfully indifferent. Thereafter, through extreme neglect by the Defendants, and a total lack of proper adult supervision, these ten-year-old boys had anal sex on the school playground on June 10, 2019.

24.     Defendants have not provided G.D. with any meaningful help or support since the sodomy at Forest Park. Rather, G.D. was told he could not return to school, offered no alternative education, and provided no counseling or therapy. G.D.'s mother was also not informed of any rights he had under Title IX. Defendants did not tell G.D. or his parents that he was entitled to any accommodations to help him deal with his trauma.

25. Defendants acted with deliberate and willful indifference to student-on-student sexual abuse and harassment and subjected their students, including G.D., to a hostile education environment based on sex in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a).

**First Claim for Relief**
**VIOLATION OF TITLE IX**
**20 U.S.C. § 1681 et seq.**

26. The allegations contained in the preceding paragraphs are hereby incorporated by reference as if herein set out in their entirety.

27. G.D. experienced ongoing sexual abuse and harassment at the hands of another student, Student X, within Defendant Kannapolis City School Board's public educational programs, specifically the "Trilogy" program.

28. G.D.'s mother reported the occurrence of the sexual abuse and harassment by Student X to Defendants; however, Defendants did nothing.

29. Defendants were obligated to address these reports because student-on-student sexual assault is a form of discrimination prohibited by Title IX.

30. G.D.'s sexual abuse and harassment was sufficiently severe, pervasive, objectively offensive, and created a hostile educational environment for G.D. based on his sex.

31. Defendants had actual knowledge that G.D. experienced sexual abuse and harassment based on his mother's reports and otherwise. Defendants further had knowledge based on the warning signs of sexual abuse and harassment through G.D.'s behavior and school performance. All individuals with knowledge had the authority and ability to investigate and take corrective action to address the sexual abuse and harassment; however, they did not do so.

32. Defendants were further obligated to address these reports under Title IX because Defendants had substantial control over G.D. and Student X, and also because the sexual abuse and harassment occurred during school hours and on the school's premises.

33. By their acts and omissions, including those by their representatives and agents, Defendants were deliberately indifferent to G.D.'s sexual abuse and harassment and created a hostile educational environment for him. Their deliberate indifference included, without limitation:

   a. Failing to timely address reports that G.D. and Student X were having inappropriate conversations about touching each other's gentiles and engaging in sexual acts together;

   b. Ignoring G.D.'s mother's report that Student X kissed G.D. without consent;

   c. Ignoring G.D.'s mother's report that Student X requested that he and G.D. engage in oral sex;

   d. Ignoring G.D.'s notable distress as his behavior significantly decreased after just being awarded Student of the Month;

   e. Conducting no investigation after it was reported by G.D.'s mother that Student X had sexually assaulted and harassed G.D.;

   f. Forcing G.D. to spend time alone with Student X despite knowing an inappropriate and sexualized relationship was occurring between the two children;

   g. Allowing G.D. and Student X to play alone together on the playground in an isolated area where they could not be observed, after having knowledge of sexual assaults and harassment between Student X and G.D.;

   h. Forcing G.D., a 10-year-old boy, to ride home on the school bus after being subjected to anal sex without a parent or close family member, and with his abuser;

   i. Failing to timely notify G.D.'s mother that her son was sexually abused and assaulted by and through child sodomy;

   j. Failing to notify G.D. or G.D.'s mother of G.D.'s rights under Title IX; and

   k. As otherwise may be shown through discovery and trial.

34. Defendants' actions and inactions caused G.D. to undergo depression, isolation, panic attacks, and anxiety. It further caused him extreme emotional distress and physical injury, in addition to economic damages, in part, by and through counseling expenses, future lost wages, loss of earning capacity and otherwise.

35. Defendants' deliberate indifference to G.D.'s sexual abuse and harassment deprived him of his access to educational opportunities and benefits provided by Defendants.

36. As a direct and proximate result of Defendants' violation of G.D.'s rights under Title IX, G.D. has suffered and continues to suffer loss of educational opportunities and benefits, along with injuries, damages and losses, including but not limited to: physical injury, emotional distress, fear, anxiety, trauma, lost future earnings and earning capacity; and expenses for past and future medical and psychological care.

## Second Claim For Relief
**VIOLATION OF RIGHTS SECURED BY THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT, 42 U.S.C. 1983**

37. The allegations contained in the preceding paragraphs are hereby incorporated by reference as if herein set out in their entirety.

38. G.D. had the right as a male public-school student enrolled at Forest Park to personal security and bodily integrity and Equal Protection of Laws.

39. Defendants' representatives and agents, including Defendant Sain and Defendant Peele, were all state actors acting under the color of state law, and on the school system's behalf.

40. Defendants subjected G.D. to violations of his rights to Equal Protection and to personal security and bodily integrity by:

    a. failing to investigate reports of sexual abuse committed on school premises;

    b. failing to address the abuser's behavior;

c. failing to adequately supervise and monitor students in their care;

d. failing to properly train their employees and classroom teachers on how to prevent and respond to sexual offenses and otherwise unlawful sexual misconduct, including sexual harassment and abuse;

e. manifesting deliberate indifference towards the sexual abuse of G.D.; and

f. as otherwise may be shown through discovery and trial.

41. Defendants operated under unconstitutional policies and/or practices including:

a. failing to investigate evidence of criminal and tortious misconduct of students in violation of students' rights to bodily integrity and personal security;

b. failing to adequately train and supervise their employees and subordinates with regard to protecting students from violations of their right to bodily integrity, personal security, and Equal Protection of the Laws, as evidenced by the conduct and omissions of Defendant Sain and Defendant Peele as alleged herein; and

c. As otherwise may be shown through discovery and trial.

42. Upon information and belief, the Defendants have followed these unconstitutional practices and policies with regard to the supervision, protection and potential abuse of multiple students on school premises.

43. Defendants' representatives and agents, including Defendant Peele and Defendant Sain, whom are sued in their individual and official capacities, referenced herein and otherwise, are or were at the time of events complained of within, policymakers for the purpose of implementing Defendants' unconstitutional policies or customs. Such administrators knew about the harassment and failed to reasonably respond to it based upon discriminatory intent.

44. Defendants' policies, customs, and/or practices, including omissions thereof, constituted disparate treatment and harassment of male students and subsequently had a disparate impact on male students within the school system.

45. As a direct and proximate result of Defendants' unconstitutional policies, customs, and/or practices that promoted deliberate indifference towards allegations of abuse, G.D. suffered severe physical, emotional, and psychological distress, in addition to the damages plead elsewhere herein, and he is entitled to recover the same in this action.

### Third Claim for Relief
### NEGLIGENCE, GROSS NEGLIGENCE & PUNITIVE DAMAGES

46. The allegations contained in the preceding paragraphs are hereby incorporated by reference as if herein set out in their entirety.

47. Defendant Kannapolis City Schools Board of Education, and Defendants Peele and Sain in their individual and official capacities, failed to exercise ordinary care in the oversight and supervision of G.D. and Student X.

48. Defendant Kannapolis City Schools Board of Education, and Defendants Peele and Sain in their individual and official capacities, failed to properly train school staff in their job duties with respect to supervising, monitoring and protecting the well-being of students, specifically including G.D. and Student X.

49. Defendant Kannapolis City Schools Board of Education, and Defendants Peele and Sain in their individual and official capacities, failed to develop and implement reasonable policies and procedures to protect the safety of G.D. and Student X, which should have insured that G.D. was not subject to sexual abuse and harassment.

50. Defendant Kannapolis City Schools Board of Education, and Defendants Peele and Sain in their individual and official capacities, failed to follow reasonable policies and procedures to protect the safety of G.D. and his classmates, which should have insured that G.D. was not subject to sexual abuse and harassment.

51. Defendant Kannapolis City Schools Board of Education, and Defendants Peele and Sain in their individual and official capacities, had a duty to provide G.D. and his classmates with a reasonably safe school environment and not to expose them to unnecessary risks and danger.

52. Defendant Kannapolis City Schools Board of Education, and Defendants Peele and Sain in their individual and official capacities, deliberately and willfully breached said duties of care: (1) when these Defendants knew of the ongoing sexualized conduct between G.D. and Student X and refused to intervene, investigate or prevent the same; (2) when these Defendants deliberately and willfully failed to supervise, monitor and control the conduct of G.D. and Student X; (3) when these Defendants engaged in a conspiracy to conceal and hide the sexual abuse of minors at Forest Park as alleged herein; and (4) as otherwise will be proven through discovery and trial.

53. Defendant Kannapolis City Schools Board of Education, and Defendants Peele and Sain in their individual and official capacities, further breached said duties of care by deliberately and willfully operating the "Trilogy" program at Forest Park in which G.D. was enrolled without reasonable policies and procedures to protect the safety of students and also failing to follow the policies and procedures that were in place.

54. As a direct and proximate result of the aforesaid acts and omissions of Defendant Kannapolis City Schools Board of Education, and Defendants Peele and Sain in their individual and official capacities, and other acts of negligence and gross negligence, which may be shown through discovery and trial, in and around 4th grade, G.D. was sodomized and sexually abused and harassed at school. Further, G.D. has suffered and will continue to suffer physical injuries, psychological injuries, causing past and future physical and emotional pain and suffering, past and future loss of enjoyment of life, permanent injuries, and past and future emotional distress, which

has necessitated and will continue to necessitate medical and psychiatric care, including expenses related thereto.

55. As a result thereof, these Defendants are liable to Plaintiff for compensatory damages.

56. The above-described acts and omissions of these Defendants constitute a conscious indifference to the rights and safety of its students, including G.D., which is gross negligence.

57. The above-described acts and omissions of these Defendants constitute willful and wanton conduct, and demonstrate a conscious, deliberate, willful and reckless disregard for the rights and safety of children, including G.D., which allows for the recovery of punitive damages from the Defendants in the amount of three times compensatory damages or $250,000, whichever amount is greater, to the extent allowed by law.

### Fourth Claim for Relief
### NEGLIGENT & GROSSLY NEGLIGENT
### INFLICTION OF EMOTIONAL DISTRESS

58. The allegations contained in the preceding paragraphs are hereby incorporated by reference as if herein set out in their entirety.

59. As a direct and proximate result of the Defendants' negligence and gross negligence as described hereinabove, G.D. has suffered and will continue to suffer severe emotional distress.

60. It was reasonably foreseeable that the Defendants' negligence and gross negligence as described hereinabove and failure to provide G.D. and his classmates with a reasonably safe school environment that G.D. could be exposed to sexually abusive conduct that could result in severe emotional distress.

61. As a direct and proximate result of the aforesaid acts and omissions of the Defendants, G.D. was exposed to sexually abusive conduct.

62. As a direct and proximate result of the aforesaid acts and omissions of the Defendants, G.D. was in fact caused severe emotional distress.

63. As a result thereof, Defendants are liable for compensatory damages for inflicting G.D. with severe emotional distress through their negligence and gross negligence.

64. The above-described acts and omissions of Defendants constitute willful and wanton conduct, and demonstrate a conscious, deliberate, willful and reckless disregard for the rights and safety of children, including G.D., which allows for the recovery of punitive damages from the Defendants in the amount of three times compensatory damages or $250,000, whichever amount is greater, to the extent allowed by law.

### Fifth Claim for Relief
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

65. The allegations contained in the preceding paragraphs are hereby incorporated by reference as if herein set out in their entirety.

66. The Defendants knew or should have reasonably known that as a result of their aforementioned extreme and outrageous conduct in ignoring and disregarding child sex abuse that G.D. would be subjected to severe mental and emotional distress, and pain and suffering.

67. Nevertheless, the Defendants acted with a reckless disregard of the probability of causing G.D. severe emotional distress.

68. The aforementioned conduct of the Defendants constitutes willful and wanton conduct, reckless indifference, and otherwise intentional infliction of emotional distress, and as a result of these acts, G.D. has suffered and continues to suffer from severe and grievous emotional distress, anxiety, nervousness, humiliation, pain and suffering, and physical manifestations thereof as hereinbefore alleged.

69.     By intentionally inflicting emotional distress upon G.D., the Defendants are liable for compensatory damages, as well as punitive damages, to the extent allowed by law.

### Sixth Claim for Relief
**VIOLATIONS OF THE NORTH CAROLINA CONSTITUTION**
**(All Defendants)**

70.     The allegations contained in the preceding paragraphs are hereby incorporated by reference as if herein set out in their entirety.

71.     Article IX of the North Carolina Constitution guaranteed and provided G.D. with full and equal access to the public educational programs and activities offered by Defendants.

72.     Article I, Section 19 of the North Carolina Constitution, the "Law of the Land Clause," provided G.D. with equal protection and opportunity under the laws of this State.

73.     "[I]n the absence of an adequate state remedy, one whose state constitutional rights have been abridged has a direct claim… under [the North Carolina] Constitution." *Corum v. Univ. of N. Carolina*, 330 N.C. 761, 782, 413 S.E.2d 276, 289 (1992). "[T]o be considered adequate in redressing a constitutional wrong, a plaintiff must have at least the opportunity to enter the courthouse doors and present his claim." *Craig v. New Hanover Cty. Bd. of Educ.*, 363 N.C. 334, 339–40, 678 S.E.2d 351, 355 (2009).

74.     To the extent it is found that Defendants have not waived their governmental or other applicable immunities to the legal claims asserted herein, or that Plaintiff's claims might otherwise fail, Plaintiff asserts G.D.'s claim for violation of his rights under the North Carolina Constitution in the alternative.

75.     G.D.'s rights under Article IX and Article I, Section 19 of the North Carolina Constitution were violated by Defendants when they failed to fulfill G.D.'s rights to an education,

"equal opportunities" in education, and equal protection and opportunity under the laws of this State.

76. As a direct and proximate result thereof, G.D. was deprived of his rights under the North Carolina Constitution, and he further sustained severe physical and psychological injuries, causing past and future pain and suffering, past and future loss of enjoyment of life, and permanent injuries, which have necessitated and will continue to necessitate significant past and future medical and psychiatric care, including expenses related thereto. G.D., by and through his Guardian Ad Litem, is therefore entitled to recover damages for the same from the Defendants.

## INCORPORATION OF ALLEGATIONS

77. All allegations set forth in each of the paragraphs in this Complaint are incorporated by reference into each of the other sections and paragraphs contained in this Complaint, as if fully set forth therein.

78. At all times relevant hereto, the employees and agents of Defendants were acting in the course and scope of their employment and agency such that their conduct, omissions and actions are legally imputed to Defendants. The actions of the employees and agents of Defendants may, and where appropriate, be attributed to Defendants pursuant to the doctrine of *respondeat superior* or otherwise.

**WHEREFORE,** Plaintiff respectfully prays of the Court as follows:

1. For judgment against the Defendants, jointly and severally, for all legally recoverable compensatory, special, general and contract damages with interest accruing at the legal rate from and after the date of entry of judgment until paid;

2. That Plaintiff have and recover punitive damages against each of the Defendants, to the extent allowed by law;

3. That Plaintiff be awarded his reasonable attorneys' fees and costs from the Defendants as allowed by law;

4. That the costs of this action be taxed against the Defendants;

5. That this matter be tried by jury; and

6. That the Plaintiff has such other and further relief to which he may be entitled and which this Court deems just and proper.

This 21st day of November, 2022.

**HOWARD, STALLINGS, FROM, ATKINS, ANGELL & DAVIS P.A.**

By: /s/ Robert H. Jessup
B. Joan Davis (State Bar No.: 17379)
Robert H. Jessup (State Bar No.: 48126)
Brooke E. Webber (State Bar No.: 56619)
Post Office Box 12347
Raleigh, North Carolina 27605
T: (919) 821-7700; F: (919) 821-7703
E: jdavis@hsfh.com
E: rjessup@hsfh.com
E: bwebber@hsfh.com
*Attorneys for Plaintiff*