IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| G.D., by and through his next friend, S.G., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:22-CV-1001 |
| KANNAPOLIS CITY SCHOOLS BOARD OF EDUCATION, MADISON PEELE, in her official and individual capacity, and JOSHUA SAIN, in his official and individual capacity, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

The minor plaintiff sued the defendants Kannapolis City Schools Board of Education, Madison Peele, and Joshua Sain for claims arising out of alleged sexual harassment and abuse by another minor occurring at school. The Board moves to dismiss the amended complaint. Because the plaintiff has plausibly alleged a Title IX claim against all the defendants, that claim can proceed, as can the equal protection and state law claims against the individuals in their individual capacities. But the motion will be granted as to the equal protection claim against the Board and the individuals in their official capacities because the plaintiff has not alleged that the harassment was a result of the Board's policy or custom, and the state law claims against the Board and the individuals in their official capacities will be dismissed for lack of subject-matter

jurisdiction because the undisputed evidence shows that the Board has not waived its sovereign immunity. The state constitutional claims are precluded because there are adequate state-law remedies.

## I. Facts Alleged

For purposes of the motion to dismiss for failure to state a claim, the Court assumes the truth of the factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). The Court may consider documents attached as exhibits to the complaint. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *see also* Fed. R. Civ. P. 10(c).

In the fall of 2018, the plaintiff, then a ten-year-old, enrolled in the fourth grade at an elementary school within the Kannapolis City school system. Doc. 30 at ¶ 12. Ms. Peele was the plaintiff's teacher, *id.* at ¶¶ 5, 12, and Mr. Sain was the principal and school administrator. *Id.* at ¶ 6. Shortly after arriving, the plaintiff "became a model student" and "was happy and doing well." *Id.* at ¶ 13. But the school noticed negative changes in his behavior after Student X joined his class. *Id.* at ¶ 14 (alleging inability to focus, declines in classroom performance, and behavioral issues). The issues between the two students escalated to "fist fights and name-calling." *Id.*

In March 2019, the plaintiff's mother told Ms. Peele that Student X was making numerous sexual comments to the plaintiff and that there was at least one non-consensual touching in the form of a kiss. *Id.* at ¶ 15. Ms. Peele reported this conduct to school officials, including Mr. Sain, but the defendants took no further action. *Id.*

2

In June 2019, after being left unsupervised in a remote area of the playground, the plaintiff and Student X engaged in sexual acts involving anal penetration over the course of several minutes. *Id.* at ¶ 17. After some few minutes, the conduct was observed by Ms. Peele, who separated the children. *See id.*; Doc. 30-2 at 1. At the end of day, Ms. Peele and Mr. Sain sent the plaintiff and Student X home on the same bus, and the school informed the parents "that an 'incident' had occurred" without disclosing its sexual nature. Doc. 30 at ¶ 18. The plaintiff disclosed the nature of the incident to his mother that night, *id.* at ¶¶ 18–19, and a medical exam later confirmed that the plaintiff had engaged in anal sex. *See id.* at ¶ 19.

The defendants then prohibited the plaintiff from returning to school, offered no alternative education, and did not provide counseling or therapy. *Id.* at ¶ 24. The plaintiff has suffered emotional harm from the abuse and harassment. *Id.* at ¶ 20 (alleging that the plaintiff suffers with "low frustration tolerance, PTSD, and intolerance to . . . touching" and that these conditions have caused him to miss many days of school).

The plaintiff brings claims under Title IX, the Equal Protection Clause, and the North Carolina Constitution, as well as state law claims for negligence and gross negligence, infliction of emotional distress, and intentional infliction of emotional distress. The Board moves to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Doc. 31.[1]

---

[1] The Board's first motion to dismiss, Doc. 23, was addressed to the original complaint. Doc. 1. As the amended complaint, Doc. 30, supersedes the original complaint, the Board's first motion to dismiss will be denied as moot.

## II. Discussion

### A. Title IX Claim

The plaintiff asserts a Title IX claim based on student-on-student sexual harassment against the defendants. Doc. 30 at ¶¶ 26–36. To state a claim, the plaintiff must show that:

> (1) they were a student at an educational institution receiving federal funds;
> (2) they suffered sexual harassment that was so severe, pervasive, and objectively offensive that it deprived them of equal access to the educational opportunities or benefits provided by their school;
> (3) the school, through an official who has authority to address the alleged harassment and to institute corrective measures, had actual notice or knowledge of the alleged harassment; and
> (4) the school acted with deliberate indifference to the alleged harassment.

*Doe v. Fairfax Cnty. Sch. Bd.*, 1 F.4th 257, 263–64 (4th Cir. 2021); *see also Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 646–52 (1999).

The plaintiff has alleged the federal funding requirement, Doc. 30 at ¶ 4, and that officials at the school had authority to address alleged harassment and institute corrective measures. *Id.* at ¶¶ 6, 31. The Board does not dispute either for purposes of this motion. *See* Doc. 33.

The plaintiff has also alleged facts tending to show actual knowledge of harassment. Doc. 30 at ¶¶ 15, 17–18. The Board relies on a Seventh Circuit case, Doc. 33 at 17–18 (citing *C.S. v. Madison Metro. Sch. Dist.*, 34 F.4th 536, 541–42 (7th Cir. 2022)), but its arguments about notice ignore the Fourth Circuit's decision in *Doe*, in which the court held that "when a school official with authority to address complaints of

4

sexual harassment and to institute corrective measures receives a report that can objectively be construed as alleging sexual harassment, that receipt establishes actual notice." 1 F.4th at 265.

The plaintiff's allegations of harassment based on sex are also sufficient. The Board's arguments that there was no harassment at all are based on inferences, ignore some of the facts alleged, and do not view the allegations in the light most favorable to the plaintiff.

As to the "severe and pervasive" element and the "deliberate indifference element," it is helpful to break down the facts into two events: (1) the explicit comments and unwanted touching and (2) the later sexual acts on the playground.

The plaintiff alleges that Student X made numerous sexual comments to the plaintiff and that there was at least one non-consensual touching. Doc. 30 at ¶ 15. The plaintiff alleges that the school knew of this because the plaintiff's mother texted the plaintiff's teacher, Ms. Peele, advising her of the harassment, *id.* at ¶¶ 15, 31, and because the school noticed that the plaintiff's behavior negatively changed after Student X joined the class. *Id.* at ¶¶ 14, 31. The plaintiff alleges that despite this, the school did not take any action to protect the plaintiff, going so far as to leave the two children unsupervised in a distant part of the playground for several minutes. *Id.* at ¶¶ 17, 21, 23. As to this aspect of the claim, the plaintiff has sufficiently stated facts to plausibly support a finding that the sexual harassment was severe enough to deprive the plaintiff of equal access to the educational opportunities or benefits provided by the school and that the school officials acted with deliberate indifference to the alleged harassment.

5

The Board contends that "the few comments and single kiss" are insufficient as a matter of law to constitute severe, pervasive, and objectively offensive sexual harassment. Doc. 33 at 13–15. "Whether gender-oriented conduct rises to the level of actionable harassment" often "depends on a constellation of surrounding circumstances, expectations, and relationships including, but not limited to, the ages of the harasser and the victim and the number of individuals involved." *Davis*, 526 U.S. at 651 (cleaned up).

As the Supreme Court has held and as the defendants correctly point out, "schools are unlike the adult workplace and . . . children may regularly interact in a manner that would be unacceptable among adults;" "[d]amages are not available for simple acts of teasing and name-calling among school children . . . even where these comments target differences in gender." *Id.* at 651–52. But here there was more than teasing and name-calling; according to the complaint, there were repeated demands for oral sex in coarse language, repeated demands by Student X that the plaintiff be his boyfriend, Doc. 30 at ¶ 15, all accompanied by fist fights and at least one physical unwanted touch in the form of a kiss. *Id.* at ¶¶ 14–15. This behavior by Student X led to numerous difficulties in school for the plaintiff. *Id.* at ¶ 14.

The cases cited by the Board are distinguishable. *Pahssen v. Merrill Community School District* involved teenagers, not ten-year-olds, and three discrete events over the course of a few weeks, *see* 668 F.3d 356, 359–60 (6th Cir. 2012), not a pattern of behavior accompanied by declines in educational performance as arguably alleged here. *Doe v. Miami University* involved one incident of non-consensual kissing between college students who had a history of engaging in consensual physical encounters, *see*

6

882 F.3d 579, 591–92 (6th Cir. 2018), not a pattern of sexually offensive behavior by a young child who would ordinarily not be left unsupervised, as alleged here.

*Hawkins* involved elementary school students and has the facts most similar to those here in terms of the initial harassing conduct. *See Hawkins v. Sarasota Cnty. Sch. Bd.*, 322 F.3d 1279, 1281 (11th Cir. 2003) (noting that the harassing student would gesture to his genitals, make vulgar comments, and touch the plaintiffs without consent). But *Hawkins* was evaluated at summary judgment, *see id.* at 1280–81, and it did not turn on whether the harassment was sufficiently severe in the abstract. Rather, the issue was whether the sexual harassment was "so severe, pervasive, and objectively offensive that it [could] be said to have systematically deprived the victims of access to the educational opportunities of the school." *Id.* at 1288. The court concluded that

> [t]he record in this case reflects no concrete, negative effect on either the ability to receive an education or the enjoyment of equal access to educational programs or opportunities. None of the girls suffered a decline in grades and none of their teachers observed any change in their demeanor or classroom participation. The girls simply testify that they were upset about the harassment, although not enough to tell their parents until months after it began. Two of the girls say they faked being sick four or five times in order not to go to school. This falls short of demonstrating a systemic effect of denying equal access to an educational program or activity.

*Id.* at 1289.

Here, the plaintiff alleges more. Whether he will be able to show that the course of conduct of Student X was severe enough to constitute a violation of Title IX remains to be seen. *See Doe*, 1 F.4th at 275 (setting out the ways the harassment can deny the victim access); *id.* at 276–77 (holding that emotional distress related to feelings of

7

humiliation, anxiety, and discomfort can be sufficient). But the plaintiff has plausibly alleged a concrete negative effect on the plaintiff's ability to participate in educational programs sufficient at this early stage of the proceedings. *See* Doc. 30 at ¶ 14.

The sexual harassment discussed so far is not the entirety of the sexual harassment alleged in the complaint. The plaintiff also alleges, and the Board appears to admit, that the plaintiff and Student X, two ten-year-old boys, engaged in sexual acts involving anal penetration and that these acts occurred over several minutes, on the playground, and while the boys were some distance away from any teacher or other supervising adult. *Id.* at ¶ 17. The plaintiff alleges that this happened because of the school officials' deliberate indifference and failure to take appropriate steps to protect the plaintiff from the known sexual harassment of Student X, *id.* at ¶¶ 16, 21, 23, and that as a result the plaintiff has experienced problems associated with his educational opportunities. *Id.* at ¶¶ 20, 24. This states a plausible claim for relief.

The Board contends that the plaintiff's claim fails because the plaintiff initiated or was a voluntary participant in the sexual acts on the playground. Doc. 33 at 1–2, 10–13. To the extent such conduct by a ten-year-old is "voluntary," they have presented some evidence to support this. But at this stage of the proceedings this is not an established fact. And even if it was, it is at least plausible that the minor plaintiff was responding to the sexual harassment from Student X with conduct in kind, which at this stage of the proceedings can be plausibly linked to the defendants' failure to protect the minor plaintiff from ongoing sexual harassment. In other words, blaming a ten-year-old child for an inappropriate response to ongoing sexual harassment instead of the adults who

8

should have protected him is not necessarily a good defense. The Board's argument is better evaluated on a more developed factual record.

The plaintiff also alleges that after the teachers learned of the sodomy, they violated Title IX by not immediately informing the parents of these events, by putting the boys on the same school bus to go home, and eventually saying only that "an incident" had occurred without disclosing its sexual nature. Doc. 30 at ¶ 18. There is no allegation of any sexual harassment or assault on the bus ride, but it can be argued that the school officials' response was deliberately indifferent to the harassment that occurred earlier that day. In *Doe*, a second sexual assault did not occur, and yet the Fourth Circuit held that the school's failure to take action to protect the victim-plaintiff from the harasser and the way in which they conducted the investigation stated a claim, since the plaintiff had evidence that her academic performance declined and that she experienced emotional difficulties. 1 F.4th at 271–74, 76–77. And, as the Court noted in *Doe*, leaving the victim "vulnerable to future harassment" can be relevant to liability. *Id.* at 274; *see also Davis*, 526 U.S. at 645 (noting an educational institution can be liable under Title IX where its indifference makes students "liable or vulnerable" to harassment).

The plaintiff also appears to contend that the defendants violated Title IX by prohibiting the plaintiff from returning to school and failing to offer him an alternative education. Doc. 30 at ¶ 24. These facts are alleged in conclusory fashion and the contours of this claim are not completely clear. The only case the plaintiff cites, *Doe*, 1 F.4th 257, does not have similar facts. In *Doe*, the Fourth Circuit did hold that a school's inadequate response to a single sexual assault can constitute deliberate indifference, but it

also said that as to the deprivation of access to educational opportunities, it is the sexual harassment that is at issue, not the school's response. *Doe*, 1 F.4th at 274–75 (noting the school's response "is relevant only to the issue of deliberate indifference"). The officials' actions and inactions after the assault may be relevant, but beyond the day of the sexual contact on the playground they do not plausibly state a separate cause of action.

### B. Equal Protection Claim

The plaintiff asserts a claim against the defendants under the Equal Protection Clause. Doc. 30 at ¶¶ 37–45. To state a claim under the Equal Protection Clause for deliberate indifference against a school administrator for known student-on-student sexual harassment, a plaintiff must allege that: (1) he was subjected to discriminatory peer harassment; (2) the school administrator knew about and responded to the discriminatory peer harassment in a manner clearly unreasonable in light of known circumstances; and (3) the school administrator's deliberate indifference was motivated by a discriminatory intent. *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 702–03 (4th Cir. 2018).

As to defendants Sain and Peele in their individual capacities, the complaint states a claim under the Equal Protection Clause for reasons previously explained. Those claims will not be dismissed.

As to the Board and the individual defendants in their official capacities, however, more is required. "A plaintiff stating a . . . claim via § 1983 for violation of the Equal Protection Clause by a school district or other municipal entity must show that the harassment was the result of municipal custom, policy, or practice." *Fitzgerald v.*

*Barnstable Sch. Comm.*, 555 U.S. 246, 257–58 (2009) (citing *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)); *see also Feminist Majority*, 911 F.3d at 700. A policy, practice, or custom may arise in four ways: (1) through an express policy; (2) through the decisions of final policymakers; (3) through an omission, such as failure to train, "that manifests deliberate indifference to the rights of citizens;" or (4) through a "persistent and widespread" practice. *Franklin v. City of Charlotte*, 64 F.4th 519, 2023 WL 2763672, at *10 (4th Cir. 2023) (cleaned up); *see also Starbuck v. Williamsburg James City Cnty. Sch. Bd.*, 28 F.4th 529, 533 (4th Cir. 2022). "No matter which of these paths [the] plaintiff takes, the official policy itself must inflict the alleged injury for the [Board] to be liable under § 1983." *Franklin*, 2023 WL 2763672, at *11 (cleaned up).

Here, the plaintiff has not alleged any specific fact tending to show that the Board had an express policy or widespread practice of ignoring student-on-student harassment. And while the plaintiff alleges that Ms. Peele and Mr. Sain were "policymakers for the purpose of implementing" policies or customs, Doc. 30 at ¶ 43, under North Carolina law only the Board itself has "the authority to make final policy for the local school district." *Barrett v. Bd. of Educ. of Johnston Cnty.*, 13 F. Supp. 3d 502, 511 (E.D.N.C. 2014) (citing N.C. Gen. Stat. § 115C-40), *aff'd*, 590 F. App'x 208, 210 (4th Cir. 2014).

The plaintiff alleges that the Board is liable through its omissions. *See* Doc. 30 at ¶ 41. But "omissions are actionable only if they constitute tacit authorization of or deliberate indifference to constitutional injuries." *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (cleaned up); *see also Estate of Billups ex rel. Billups v. Baker*, No. 22-CV-206, 2023 WL 2333886, at *3 (E.D.N.C. Mar. 2, 2023). The Board's "liability

11

under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made among various alternatives by [the Board's] policymakers." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (cleaned up).

Here, the plaintiff has not alleged any specific fact tending to plausibly indicate that the Board itself was on notice of the sexual harassment. *See* Doc. 30 at ¶ 15 (alleging that Ms. Peele reported Student X's conduct to Mr. Sain and "other officials at Kannapolis City Schools"); *id.* at ¶ 21 (alleging in conclusory fashion that "Kannapolis City Schools" had "actual knowledge of the ongoing inappropriate sexual conduct"). Without such notice, the Board's actions or inactions could not have "constitute[d] tacit authorization of or deliberate indifference to constitutional injuries." *Wellington*, 717 F.2d at 936 (cleaned up); *see Woods v. Chapel Hill-Carrboro City Schs. Bd. of Educ.*, No. 19-CV-1018, 2020 WL 3065253, at *7 (M.D.N.C. June 9, 2020) (holding the plaintiff stated a § 1983 claim against a school board because the board "was aware that students were being sexually abused [from a report made by the principal to the board's central office], had the authority to direct a remedy that was not clearly unreasonable, yet chose not to do so" (cleaned up)). The claim under the Equal Protection Clause against the Board and against the individual defendants in their official capacities will be dismissed.

The Board also seeks to dismiss the plaintiff's claims under the Equal Protection Clause based on failure to train and disparate treatment. Doc. 33 at 21. There are only passing references in the complaint to failure to train, *see* Doc. 30 at ¶¶ 40(d), 41(b), and the plaintiff does not address these arguments in his briefing. *See* Doc. 34. To the extent the plaintiff is asserting these claims, they will be dismissed as conclusory.

12

### C. State-Law Tort Claims

The plaintiff asserts three state-law tort claims against the defendants, Doc. 30 at ¶¶ 46–69, and alleges that the Board has waived its sovereign immunity "by purchasing liability insurance." *Id.* at ¶ 9. Sovereign immunity raises a subject-matter jurisdiction issue, *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018), and the Board moves to dismiss the tort claims for lack of subject-matter jurisdiction. *See* Doc. 31; Doc. 33 at 26–29.

By contending it has not purchased liability insurance, *see* Doc. 33 at 27, the Board makes a factual challenge to subject-matter jurisdiction, which challenges the truth of the jurisdictional allegations in the complaint. *See Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009) (discussing the difference between facial and factual challenges and the distinct standard of review for each); *see also Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Thus, the Court treats the allegations in the complaint as "mere evidence on the issue" of subject-matter jurisdiction and may consider documents provided by the parties "without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *see also Adams*, 697 F.2d at 1219. The plaintiff bears the burden of proving the necessary jurisdictional facts by a preponderance of the evidence. *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009).[2]

---

[2] Although courts should decline to resolve relevant factual disputes until after appropriate discovery if "the jurisdictional facts are inextricably intertwined with those central to the merits," *Kerns*, 585 F.3d at 193, here the disputed jurisdictional fact is a "threshold issue[] wholly unrelated to the basis for liability" under state law. *Id.* at 196.

Case 1:22-cv-01001-CCE-LPA   Document 36   Filed 04/27/23   Page 13 of 18

Under North Carolina law, a board of education is a governmental agency and is "not ordinarily liable in a tort action unless the board has waived its sovereign immunity." *Herring v. Liner*, 163 N.C. App. 534, 537, 594 S.E.2d 117, 119 (2004). By statute, a board may waive its sovereign immunity by securing liability insurance that "actually indemnifies the board of education or its employees." *Id*. at 119–20 (citing N.C. Gen. Stat. § 115C-42). "The statute makes clear that unless the negligence or tort is covered by the insurance policy, sovereign immunity has not been waived." *Beatty ex rel. Beatty v. Charlotte-Mecklenburg Bd. of Educ.*, 99 N.C. App. 753, 755, 394 S.E.2d 242, 244 (1990); *see, e.g.*, *Woods*, 2020 WL 3065253, at *9.

A coverage agreement with the North Carolina School Boards Trust [NCSBT] "does not waive [sovereign] immunity because the NCSBT does not qualify as liability insurance under section 115C-42." *J.W. v. Johnston Cnty. Bd. of Educ.*, No. 11-CV-707, 2012 WL 4425439, at *10 (E.D.N.C. Sept. 24, 2012) (collecting cases). But a board may waive its sovereign immunity by "procur[ing] excess liability insurance coverage through the NCSBT from a licensed commercial insurance carrier." *Id.* (cleaned up) (quoting *Lail ex rel. Jestes v. Cleveland Cnty. Bd. of Educ.*, 183 N.C. App. 554, 561, 645 S.E.2d 180, 185 (2007)).

Here, the Board has presented undisputed evidence that it had a coverage agreement with the NCSBT. *See* Doc. 33-2 at 3–28. This does not qualify as liability insurance and does not waive sovereign immunity. *See J.W.*, 2012 WL 4425439, at *10.

The Board has also presented undisputed evidence that it did not have a liability insurance policy in place during the relevant time. *See* Doc. 33-3 at ¶ 4. The plaintiff

14

offers no evidence to the contrary but contends that he "has no way to confirm" that the policy attached by the Board is the only policy the Board has purchased, Doc. 34 at 20, and that the Court must "draw the most favorable inferences for the existence of jurisdiction." *Id.* at 21. But the plaintiff bears the burden of proving subject-matter jurisdiction here, and he must have something beyond conjecture, even at this early stage, to rebut the Board's evidence. *See Jadhav*, 555 F.3d at 347. In the absence of such evidence, the Court concludes that the Board has not waived its sovereign immunity.

The plaintiff contends that "purchase of commercial liability insurance is not the only way to waive immunity" and that the Board may have waived its immunity by participating in a governmental risk pool or settling some claims of a certain type but not others. Doc. 34 at 20. But § 115C-42 "provides the only means by which a board of education may waive its sovereign immunity." *Herring*, 594 S.E.2d at 119; *see also J.W.*, 2012 WL 4425439, at *9; *Ripellino v. N.C. Sch. Bds. Ass'n*, 158 N.C. App. 423, 428, 581 S.E.2d 88, 92 (2003); *Hallman v. Charlotte-Mecklenburg Bd. of Educ.*, 124 N.C. App. 435, 438, 477 S.E.2d 179, 181 (1996) (noting that § 115C-42 governs waiver of immunity for boards and does not provide for waiver of immunity by participation in a risk pool). And the undisputed evidence shows that it has not done so here. The state-law tort claims against the Board and the individual defendants in their official capacities will be dismissed for lack of jurisdiction.

Sovereign immunity does not apply to the claims against the individual defendants in their individual capacities. *See Woods*, 2020 WL 3065253, at *9. The state-law tort claims against Ms. Peele and Mr. Sain in their individual capacities will not be dismissed.

15

### D. North Carolina Constitutional Claims

The plaintiff asserts claims in the alternative under Articles I and IX of the North Carolina Constitution against the defendants. *See* Doc. 30 at ¶¶ 70–76.

To state a claim under the North Carolina Constitution, the plaintiff must allege that: (1) a state actor violated his constitutional rights; (2) the claim is colorable; and (3) there is no adequate state remedy. *Deminski ex rel. C.E.D. v. State Bd. of Educ.*, 377 N.C. 406, 413, 858 S.E.2d 788, 793–94 (2021).

A plaintiff has a colorable claim under Article I and IX of the North Carolina Constitution when "a school board's deliberate indifference to ongoing harassment prevents [him] from receiving an education." *Id.* at 792. "To be considered adequate in redressing a constitutional wrong, a plaintiff must have at least the opportunity to enter the courthouse doors and present his claim," *id.* at 794 (cleaned up), and "a claim that is barred by sovereign . . . immunity is not an adequate remedy." *Id.* "North Carolina courts have found adequate state law remedies to exist where a state law claim against an officer in his individual capacity remains even after the dismissal of official capacity claims against another defendant." *Barrett*, 13 F. Supp. 3d at 514 (cleaned up).

Here, the plaintiff's state-law tort claims against Ms. Peele and Mr. Sain in their individual capacities will not be dismissed and give the plaintiff "the opportunity to enter the courthouse doors and present his claim." *Deminski*, 858 S.E.2d at 794 (cleaned up); *see Brattain v. Stanly Cnty. Bd. of Educ.*, No. 19-CV-1037, 2020 WL 6364718, at *9 (holding that tort claims against individual defendants were adequate remedies and dismissing state constitutional claims); *Barrett*, 13 F. Supp. 3d at 514–15 (same);

*Edwards v. City of Concord*, 827 F. Supp. 2d 517, 524 (M.D.N.C. 2011). Thus, there is an adequate state-law remedy, and the state constitutional claims against the Board and the individual defendants will be dismissed.

## III. Conclusion

The plaintiff has plausibly alleged a Title IX claim against all the defendants, and it may proceed, without prejudice to a summary judgment motion after discovery. The equal protection and state-law claims against defendants Sain and Peele in their individual capacities may proceed, again subject to a summary judgment motion after discovery. All other claims are dismissed.

It is **ORDERED** that:

1. The defendant Kannapolis City Schools Board of Education's motion to dismiss the original complaint, Doc. 23, is **DENIED as moot**.

2. The defendant Kannapolis City Schools Board of Education's motion to dismiss the amended complaint, Doc. 31, is **DENIED in part** and **GRANTED in part** as follows:

    a. To the extent the plaintiff asserts a Title IX claim based solely on failure to provide an appropriate education after the incident, the claim is **DISMISSED**, but the Title IX claim can otherwise proceed.

    b. The Equal Protection Clause claim against the Board and against the individual defendants in their official capacities, Doc. 30 at ¶¶ 37–45, is **DISMISSED**. This claim against defendants Sain and Peele in their individual capacities may proceed.

17

c. The state-law tort claims against the Board and against the individual defendants in their official capacities, *id.* at ¶¶ 46–69, are **DISMISSED** without prejudice for lack of subject-matter jurisdiction. The state-law tort claims against defendants Sain and Peele in their individual capacities may proceed.

d. The claims under the North Carolina Constitution against the Board and the individual defendants, *id.* at ¶¶ 70–76, are **DISMISSED**.

This the 27th day of April, 2023.

_____
UNITED STATES DISTRICT JUDGE